# D. & R. Meade v. Rutledge.

Where the petition alleged a written contract of hire for a year, but did not allege when the service was to commence, and the writing itself did not specify the time, it was held that proof (parol) was properly admitted, as to the time of the commencement of the service ; but the petition alleged part performance of the service and a readiness to perform the balance, when the plaintiff was discharged by the defendants on a certain day, and not permitted by them to render further service.

Where the Court below permitted the plaintiff's counsel, after the close of the testimony, to suggest the death of the plaintiff, and have his administrator made a party, the Supreme Court said, the object of the law was attained by having a party, at the verdict and judgment. It would have been idle, after the party was formally made, to have caused the evidence to be again repeated to the jury.

Where the plaintiff declared on a contract of hiring, as overseer, for a year, and the defendant pleaded a general denial, payment and settlement, the Court said, It does not appear from the record, that any question was made below, relative to the term of service. It had been averred by the plaintiff, and not specifically denied by the defendants, to be for a year—and upon this point no instruction was sought from the Court. Probably both parties regarded it as a yearly contract ; and this, although the terms are indefinite, was not, in relation to this class of contracts, an unreasonable construction. Overseers are generally employed by the year, and there is nothing in the terms of this contract, which required it to be constituted an exception to the general usage.

A tender of performance of a condition precedent in a contract, and a refusal to accept, will sustain an action on the contract ; but the recovery will be restricted to the amount of damage actually sustained, except where the condition precedent can be performed at once, by a single act. The services of an overseer or mechanic (in the case supposed in the opinion) are not such as can be performed by a single act ; the delivery of ·a carriage or horse to one who has contracted to purchase it, can be performed by a single act. In the latter case, the party refusing can sue and recover the property, but not so in case of disagreements between employers and overseers or mechanics.

Contracts for overseers' wages are not, it is believed, now at least, generally considered as entire, or incapable of apportionment. (But see next to the last paragraph of the opinion.)

Where an overseer sued on a contract of hire for a year, at a certain amount per annum, payable monthly, and board and provisions for himself and wife during the time, alleging that, on a certain day after the commencement of the service, his employers discharged him, and proved the costs of boarding and providing a man and wife in that neighborhood, the Court said there was no damage proved. The salary had been paid, and provisions, &c., furnished to date of discharge.

Appeal from Bexar.    Thomas P. Rutledge, the deceased

testator, was employed by the Messrs. Meade in the capacity of an overseer, in the fall of 1847, and was by them discharged on the first of January, 1848. In July, 1848, he instituted this suit, alleging the contract to be for one year, and that he was to be paid the sum of six hundred dollars, and to be furnished board and provisions for himself and wife during the term of the said year; that he had rented his own farm, and left his cattle and other stock in the hands of other persons, and had removed with his wife to the plantation of the said Meades, and had entered faithfully upon the discharge of the duties required of him; that he was discharged on the first of January, and was not permitted by the appellants to render further services, though always ready and willing to perform them according to the terms of the contract; that the appellants had refused to pay the six hundred dollars and furnish the said board and provisions; and he prayed for judgment and that damages be awarded against them.

The defendants answered by a general denial, plea of payment and settlement. The defendants, in reply to an interrogatory, admitted the fact of discharge, and averred faithful performance of their obligations to Rutledge, and that they had fully paid him all demands against them, viz: on the first day of January, 1848.

A copy of the agreement was filed. There was no direct specification that the services were to be for one year. It was agreed that the salary should be at the rate of six hundred dollars per annum, payable monthly in silver.

At the close of the testimony, the executor of the deceased Rutledge was, on the suggestion of counsel, made a party, to which the defendants excepted.

The evidence was to the effect, (the discharge of plaintiff was acknowledged by defendants' answer,) that Rutledge was seen, by one of the witnesses, in San Antonio about September, 1847, but was not seen doing any thing; that, to have boarded and furnished a house in San Antonio, for man and wife, for one year, was worth five hundred dollars, and would

not have been much less on a farm. Another witness testified that Mr. Rutledge lived upon a farm on the Guadalupe river, and owned some cattle; that he rented the same, four or five years since, for one year, and moved away; that he was a good practical farmer, and of fine business habits and qualifications, &c. Mr. Lewis testified that on the first of January, 1848, Rutledge presented him an order, drawn by the Meades on the witness, in favor of Rutledge, for $110 " balance due the said Rutledge on settlement," which he paid on the following day, when Mr. Rutledge remarked that he had quit the Messrs. Meades, because they would not let him flog the negroes, or words to that effect.

The jury found for the plaintiff seven hundred and thirty-four dollars damages.

Motion for new trial was overruled, and cause was brought up by appeal.

The errors assigned were:

1st. Overruling the motion for a new trial.

2nd. In admitting testimony as to the time the contract went into operation.

3rd. In permitting the executor of Rutledge to be made a party, after the testimony had closed.

4th. Because the verdict and judgment are contrary to law and the evidence in the case.

*S. G. Newton*, for appellants. I. The petition avers the contract, service and breach upon the first of January, 1848, but does not allege the time the contract went into effect. It was error, therefore, to admit proof of the time. (Mims v. Mitchell, 1 Tex. R. 443; 2 Cowp. 682; Harrison v. Nixon, 9 Peters, 503; Caldwell v. Haley, 4 Tex. R. 317; Hall & Jones v. Jackson, Id. 305; Young v. Lewis, 9 Id. 73.)

II. The second exception taken on the trial, was to permitting the administrator of defendant to be made a party to the suit, upon suggestion, after the testimony had been closed. We do not conceive the statute to mean any thing more than

to provide a way by which a deceased party may be represented, (Hart. Dig. 697,) and does not mean that any proceedings whatever can be had until the deceased is represented. Does not the deciding of motions and exceptions during the trial, affect, for good or evil, the interests of the parties? If so, who is to be bound unless there is some person to represent the interests of the deceased party.

III. The verdict was contrary to law and evidence. The *gravamen* of this action is damages. They are alleged generally, without stating when or how they occurred. The damage complained of, is, not that he was forbid to render service, but that defendants had not paid the salary claimed; nor furnished the board and provisions, to the damage two thousand dollars.

Now, to obtain judgment, plaintiff must prove the contract as alleged, and that he was discharged without cause, and that the wages, board and provisions claimed, were due at the bringing of the suit. Does the proof sustain the allegations of the petition? We think not. The contract filed and admitted is not such a one as described; it is not a contract in regard to time but simply in regard to service and pay; and the rule that a written contract must be taken for what it expresses upon its face, without adding to or diminishing therefrom, is too well established to require demonstration at this time. It says nothing as to when the service should commence, nor when it should cease; indeed, it is without any date whatever. And if it had been the intention of parties that it should define this part of the contract, surely the parties would have had a clause inserted to that effect. They not having done so, the Court will presume it embraced all that was intended, and will not add thereto by presumption or proof. It will not come under the rule established by this Court, that in case of doubt or uncertainty they will hear parol tertimony to explain; because the contract is perfect in all that it purported to fix; and could it by possibility have done so, it would require averments in the original or an amended petition, to the effect

that the contract required explanation. Plaintiff not having done so, has relied upon the contract as it is, and must be bound by his pleadings.

Then, if the evidence does not support the allegations, the plaintiff cannot recover, even if it would support a verdict under a different state of pleadings.

The next point in the proof of the plaintiff that is wanting, and it is also lacking in the averments of the petition, is, that plaintiff was discharged without cause. That a contract may be dissolved by either party when the other fails to perform his portion of its requirements, will no doubt be admitted, and the presumption that the party dissolving it had the right to do so, always exists in absence of averments and proofs to the contrary.

The third requirement of the proof under the pleadings, is, that the wages, board and provisions should have been due at the time of the bringing of the suit. That such is not the fact, is apparent upon the face of the petition itself, for it avers the contract went into effect in October or November, 1847. The petition was filed in the July following, and a year could not by possibility have elapsed, and the only possibility of re-covering anything would be a recovery for such damages as had actually been suffered, or had accrued up to the time of the bringing of the suit. And under the pleadings this could not be ascertained. In suits of the kind at bar, actual dam-ages only can be recovered, and not exemplary or vindictive damages ; and it is a well established principle, that suits for actual damages must show in what that damage consists. Does the suit at bar do so ? We have contended that it does not.

The petition says the damage arose from the fact that " de-" fendant failed and refused to pay the plaintiff the said sum " of six hundred dollars, and to furnish the board and provi-" sions for one year, according to the terms of the contract, " whereby he was damaged two thousand dollars." The peti-tion at the same time shows that the sum of money, board

and provisions, were not due at the time of bringing the suit, and his damages being an entirety, he must prove the damage as laid. (Miller v. Mariner's Church, 3 Greenlf. R.; Shannon v. Comstock, 21 Wendell, 457.) '

Again, we can plainly see the injustice of the verdict, on account of its excessiveness. And this Court has decided that where the law of the case has been mistaken by the Court, and there is reason to believe that the verdict may have been influenced by such mistake, the judgment will be reversed and the case remanded, unless it appears that the justice of the case has nevertheless been attained. (Mims v. Mitchell, 1 Tex. R. 443.)

We, however, believe that this contract could only be construed for monthly service, and if so, it is conclusive in evidence that plaintiff has been paid and furnished all he was entitled to.

IV. For authority touching the various questions urged in this Court, we beg leave to refer to 1 Tex. R. 442; 9 Pet. R. 503; Caldwell v. Haley, 3 Tex. R. 317; Borden et al. v. Houston, 2 Tex. R. 594; Carter & Hunt v. Wallace, 2 Tex. R. 206; Catlin v. Glover, 4 Tex. R. 151; Wells v. Fairbanks, 5 Tex. R. 582.

Upon the questions of damages and measure of damages, we respectfully refer to Sedgwick Mea. Dam. 27, 28, 36, 68, 95, 194 and 204, et seq. and 223; Shannon v. Comstock et al., 21 Wendell, 457; Caldwell v. Read, Little's Select Cases, 366; Chamberlin v. McCalister & Sanders, 6 Ky. R. 352.

*Denison* and *Vanderlip & Jones*, for appellee. I. There was no error in admitting testimony as to the time when the contract was made, or should take effect. There was no date to the written contract. There was no other mode of ascertaining the date, than by parol testimony.

II. There was no error in permitting plaintiff's executor to be made a party, after the evidence had gone to the jury. If

the cause of action survives, at any time before the verdict, up-on suggestion merely, the legal representative of a deceased plaintiff may be made a party, and the suit shall proceed in his name. (Hart. Dig. Art. 697.)

III. The verdict of the jury was not contrary to law. This was a general employment or hiring, and was for a year. (Chitty on Contracts, p. 579, 580, 581.) If a contract is made 'for labor or services for a certain period, and the employer discharges the employee before the expiration of the time, without any fault of the latter, he may recover for the whole time stipulated. (Byrd v. Boyd, 4 McCord (So. Car.) R. 246; Britton v. Turner, 6 N. Hamp. R. 481.)

IV. The verdict was not contrary to evidence. Defendants admit that they discharged plaintiff, and the presumption is that sufficient proof was given to the jury, that he was wrong-fully discharged. The verdict was not excessive, considering that plaintiff had abandoned all other pursuits for the time stipulated—it was a verdict sounding in damages. The pro-vince of the jury was to judge of the facts. Their verdict will not be set aside by the appellate Court, unless it appears to be clearly and manifestly contrary to the evidence.

HEMPHILL, Ch. J. We are of opinion that evidence of the time of the commencement of the contract was admissible under the pleadings. It was not specified in the writing, and consequently extrinsic proof became necessary.

Nor was there error in making the executor a party, after the close of the testimony. The object of the law was attain-ed by having a party at the verdict and judgment. It would have been idle, after the party was formally made, to have caused the evidence to be again repeated to the jury.

The principal questions arising upon the assignments, and the arguments of counsel are,

1st. Whether the contract was for one year; and

2nd. If for a year, whether the verdict and judgment be supported by the facts of the case.

It does not appear from the record, that any question was made below, relative to the term of service. It had been averred by the plaintiff, and not specifically denied by the defendants, to be for a year—and upon this point no instruction was sought from the Court. Probably both parties regarded it as a yearly contract; and this, although the terms are indefinite, was not, in relation to this class of contracts, an unreasonable construction. Overseers are generally employed by the year; and there is nothing in the terms of this contract, which required it to be constituted an exception to the general usage.

The contract, then, being for a year, and having been broken by the dismissal of the plaintiff, the question as to the measure of his damages arises for consideration. It is contended by the appellants, that the criterion by which this is to be ascertained, is the loss actually sustained; and by the appellee, that, as he was dismissed without cause, he is entitled to recover for the whole time stipulated. Upon this, and questions of an analagous character, there will be found, on examining the authorities, quite a conflict of opinion. In older cases, even in relation to overseers' wages, the rule is generally recognized, that contracts for hire cannot be apportioned, and that the employee, if he voluntarily abandon the service before the period specified in the contract, can recover no compensation for services already rendered; and on the contrary, if dismissed without good cause, he can recover wages for the whole time. That this rule is merely technical and, in its operation, inflicts great injustice, is obvious, on the slightest reflection. If, for instance, the plaintiff in this case, after rendering ten months' services, and which might be most beneficial to his employers, had left the employment or been discharged for sufficient reason, would it not be most oppressive to deprive him of all compensation for the services actually rendered? The damages resulting from his abandonment may have been very slight. His place might perhaps have been promptly filled by another equally competent. To refuse compensation

for the actual service, under such circumstances, would be in fact compelling the plaintiff to bestow upon the defendants the sum of five hundred dollars gratuitously, for the mere purpose of carrying into effect a technical rule of law, not properly applicable to cases of this nature. The converse of the rule, if enforced against the planter, would be equally onerous.

If the offer, by an overseer, to perform service, is equivalent, in every respect, to actual performance, he might, without doing duty for a day, recover wages for the year—although perhaps he may be engaged during the year elsewhere in some employment equally or perhaps more profitable—or might have been engaged, had he made any attempt to procure employment. This would be too monstrous to be sanctioned by any sound principles of law or rules of equal justice.

The planter might, in the course of the year, remove elsewhere, or his plantation or forces might be sold for debts; would there be any justice in an overseer's exacting compensation for the whole year? Or would it not be much more reasonable that he should be paid for services actually performed; and such damages as would probably result from this unexpected dissolution of the contract?

Let us suppose, in an analogous case, that a mechanic had been employed to build a house, and after some work done, or before commencement, the employer finds himself without funds, or for some reason forbids the execution of the work, can the the mechanic, under the rule in relation to tender, recover the contract price of the work, as though it had all been performed? This seems to have been, at one time, the general rule; but the contrary may now be said to be established, and the damages actually sustained only allowed for compensation.

Such is the recognized criterion, for damages to be allowed mechanics, boatmen, &c., for breach of contract, in the cases of Shannon v. Comstock, 21 Wendell, 451; 1 Denio, 317; Littel's Select Cases, 366; 6 Dana, 352; 7 Dana, 472; 8 Dana, 48.

The whole doctrine, in relation to the extent and operation of the rule, that a tender to perform a condition precedent in a contract, and a refusal to accept by the party entitled to the benefit of it, is equivalent to performance, was examined and discussed with great ability in the cases from Kentucky; and it was shown to be operative only to authorize suit for non-performance, but that plaintiff's recovery would be restricted to the amount of damage actually sustained, unless the condition precedent could have been performed at once, by a single act, which the plaintiff had offered to perform; and when, too, the defendant, notwithstanding the refusal, might bring a suit and recover the property or thing tendered. But the services of an overseer or mechanic are not such as can be performed by a single act. They are continuous, and though offered to be commenced, yet they are liable, from many causes, to interruption; and, in no just sense, can a tender or offer to perform, be equivalent to a full performance. If a carriage or a horse be offered to a person who has contracted to purchase, the tender is equivalent to performance, and the party offering is entitled to full price, for the reason that the condition precedent can be performed by the single act of tender, and the party refusing is entitled to and can recover the property; but not so in case of disagreements between employers and overseers, or mechanics. The party offering can only make a commencement of service, without any certainty of its being completed; and the party refusing, on account of his own default, can have no remedy against the other to enforce performance.

Contracts for overseers' wages are not, it is believed, now at least, generally considered as entire—or incapable of apportionment. Such, at least, is not the rule as now recognized in South Carolina; (4 McCord, 246-249; 2 Hill, 486;) or in Mississippi. (6 Smedes & Marshall.)

If an overseer were turned off at a season of a year when he could not get employment, then the damages awarded should be commensurate with the sum which had been con-

tracted to be given. But the rule for estimating his compensation, is not the contract price for the whole period, but the damages and loss actually sustained—not however to exceed the amount to which he would have been entitled, had the contract been fulfilled. Where the overseer is discharged at an early period in the term, there will be very few cases in which his loss will be equal to the whole amount of the contract price—as there will be but few cases in which an industrious man will not, for the greater part of a year, be able to find employment.

There was no damage proven in this case, by the plaintiff, nor was there any attempt by the defendant to show that no damage had been sustained. There is very little satisfactory evidence in the case. Judgment reversed and cause remanded.

Reversed and remanded.