## G. W. Hearne v. B. B. Garrett.

1. Suit for part performance on contract.—Where one is employed to perform some stipulated work, or to labor for a specified period of time, and, after part performance on his part, is wrongfully prevented from completing the work contracted for, or laboring for the full period stipulated, the employee may treat the contract as abandoned, and may sue for the reasonable value of the labor performed or service rendered; and the employer is estopped from setting up the contract as a bar to the action.

2. Same—Need not wait till expiration of time.—In such case, the employee may sue at once on the contract for damages sustained by its breach.

3. Same—Breach as to measure of damage.—Although a tender of performance by the employee and refusal by the employer gives an immediate right of action for its breach on the contract, yet it is not tantamount to performance in determining the measure of damages, unless the contract is clearly not apportionable.

4. Measure of damages.—Ordinarily, the measure of damages, where the employee has been dismissed, is the loss sustained by his being prevented from completing the contract, a *pro-rata* payment for the services rendered, and profits lost.

5. Same—On breach of contract to hire.—When the employee waits until the expiration of the time before suit, in some cases, on proof of inability to obtain other employment, he may recover the entire contract price; taking the contract as a means of ascertaining the loss sustained, rather than as a fixed measure of the damages resulting from the breach.

6. Same.—In an action for damages for breach of such contract, the court charged that plaintiff was entitled to the value of his services during the time he labored for the defendant, and damages suffered by reason of the breach : *Held*, Error, in not further instructing that they must take the contract as the standard for determining the value of the services rendered.

7. Same.—It seems, in such case, the plaintiff should show (1) the value of his services performed under the contract as a standard; (2) the profits which plaintiff might have realized if he had been permitted to complete the contract; and, where the contract wages for the time are insisted upon (3), that proper efforts were made by plaintiff to obtain other remunerative employment, and the amount he had received to be credited.

Appeal from Robertson.   Tried below before the Hon. John B. Rector.

Bumford B. Garrett sued G. W. Hearne, in the District Court of Robertson county, for damages on a breach of contract.

Garrett alleged that in January, 1874, he contracted with Hearne to secure and bring from Alabama to Texas, for Hearne, a number of farm hands, for the ensuing year. Garrett was to superintend the farm and the hands for the year, and was to run as engineer Hearne's steam-gin while ginning out the crop of 1873; that for this service Hearne was to pay all the expenses of the journey to and return from Alabama, and to pay $800 in gold at the end of the year 1874; that plaintiff had faithfully performed his part of the contract in obtaining hands and bringing them to Texas, in ginning out Hearne's crop of cotton for 1873, and that he had commenced work with the hands on the plantation, &c.; that without fault of plaintiff, Hearne had discharged him, to his damage $800. By amendment, it was alleged that plaintiff made the contract with one Mr. Matkin, agent for Hearne, which was by him ratified; that the term of the contract for hire had expired, and that the hands had remained on Hearne's plantation during the year. The amended petition concluded with prayer in the usual form in assumpsit, for the contract price as damages, for costs, &c.

The defendant demurred; pleaded a general denial; alleged that Garrett was not competent as an engineer to run the gin, as he had undertaken to do; that plaintiff had failed to bring the number of hands from Alabama he had contracted for; and pleaded in reconvention money furnished plaintiff and not accounted for.

Verdict and judgment for plaintiff for $607.45. Hearne's motion for new trial having been overruled, he appealed.

The rulings complained of are sufficiently set out in the opinion.

*Davis & Beall,* for appellant.

I. The court erred in its first instruction to the jury, in

authorizing them to find damages for plaintiff upon the con-
tract, because the suit was brought for the full contract price
before the expiration of the term of service. (Hassell *v.* Nutt,
14 Tex., 265; Herrington *v.* Holman, 25 Tex. Supp., 260.)

II. Though the contract sued upon was apportionable, it
was not so treated in the plaintiff's petition, and the charge
of the court should have conformed to the pleadings. (Her-
rington *v.* Holman, 25 Tex. Supp., 259; Meade *v.* Rutledge,
11 Tex., 50; Hassell *v.* Nutt, 14 Tex., 265.)

III. There were no special damages alleged, arising from
the breach of the contract sued upon, nor value of services
of plaintiff while he remained with the defendant, to which
the charge referred to was responsive. (Love *v.* Wyatt, 19
Tex., 316; Sutton *v.* Page, 4 Tex., 146.)

IV. The court erred in refusing this charge, as under the
pleadings plaintiff was not entitled to recover for the value
of his services. (Mooring *v.* Campbell, 47 Tex., 37; McGreal
*v.* Wilson, 9 Tex., 426.)

V. In the absence of proof of special damages, the law im-
plies some damages from the breach of contract; but they
should have been merely nominal. (Hope *v.* Alley, 9 Tex.,
395; McGreal *v.* Wilson, 9 Tex., 426; Lee *v.* Hamilton, 12
Tex., 413; Earle *v.* Thomas, 14 Tex., 583; Mooring *v.* Camp-
bell, 47 Tex., 37.)

VI. The offer to perform the contract on the part of the
plaintiff was *quasi*-performance, for the purpose of bringing
the action, but does not regulate the amount of damages.
(Meade *v.* Rutledge, 11 Tex., 50; Sedg. on Dam., 226, and
note; Jones *v.* Van Patten, 3 Ind., 107.

*Collard & Field,* for appellee.—Plaintiff's petition shows a
contract that cannot well be apportioned. Several distinct
acts had to be performed, each one of which required a cer-
tain personal influence or skill. The hands had to be employ-
ed and induced to leave Alabama and come to Texas, and
the plaintiff had to come with them, leave his own home and

employment, and conduct the hands through to Texas. This required a certain personal influence with laborers employed. When the hands were delivered to defendant, that job was ended. Plaintiff had to superintend these hands during the year. He also had to gin out the remnant cotton crop of 1873; and to do that plaintiff engaged as an engineer. Plaintiff did not engage to oversee for defendant for 1874; he did not engage as his general agent, or to do anything measured by any specified time. He was to do several separate acts, all of which made one entire contract, it is true. He was to be paid "at the end of the year," and one of his special engagements might not probably end before the year was out; that is, his superintending the work of the hands employed in the cultivation of the farm. This would depend upon the construction of that part of the undertaking of plaintiff; and if the farm should be considered as cultivated before the year was out, or before the crop was gathered, then plaintiff's obligation would end before the year was out. This case is not similar to the case of Meade *v.* Rutledge, 11 Texas, 44–54, in which the learned Chief Justice Hemphill used the following moderate language as to the entirety of such contracts: "Contracts for overseer's wages are not, it is believed, now at least, regarded as entire or incapable of apportionment. Such, at least, is not the rule, as now recognized, in South Carolina or Mississippi." (11 Tex., 53.) But still, he says, even in the case of an overseer employed in that capacity, and by the year, for a stipulated price, "If an overseer were turned off at a season of a year when he could not get employment, then the damages awarded should be commensurate with the sum which had been contracted to be given." (Id.) This case is, however, only similar to that in one respect: that plaintiff was to superintend the hands brought by him from Alabama in the cultivation of defendant's plantation. The rest of the undertaking—to bring the hands out from Alabama, and to run the steam-gin until the remnant cotton crop of 1873 should be ginned out—are additional

undertakings. Suppose plaintiff were to try to apportion this contract, how would he make the divided charges? Not by time; for the character in which he was employed to bring the hands out to Texas would be worth more, according to the length of time so employed, than his character in the capacity of superintendent of the hands. We add the same as to his engagement as an engineer. He could not charge by the several jobs on a *quantum meruit*, with the contract before him to guide him.

It occurs to us that there could be no way to estimate the damages in this case, except by the contract price for the several things together, less the amount which plaintiff made after his discharge in the time that belonged to defendant; and we must say there is great doubt in our minds about allowing the deduction at all, as under this contract it is so difficult to determine how much time plaintiff agreed to devote to defendant's business. To be within bounds, however, we have given defendant credit for every dollar plaintiff made during the year 1874; and the jury must have considered this.

The case of Hassell *v.* Nutt is also unlike the one at bar, though it is very decided authority for the appellee. That was a suit for a breach of contract for overseer's wages; alleging contract and breach in general terms, and claiming damages in general terms for $500. (14 Tex., 261.) This suit was brought in the same way, and the damages are laid at the sum mentioned in the contract; still they are laid in general terms at $800. Plaintiff could not have recovered more than that sum, according to the opinion of Judge Hemphill in Meade *v.* Rutledge. In the case of Hassell *v.* Nutt, the overseer's wages were to be one-fifth of crop and the use of a house on the farm. In April, Nutt was discharged, no reason being assigned, and thereupon Nutt immediately brought suit. He proved on the trial his performance of the contract up to the time of his discharge. He also showed the amount of land in cultivation, the probable yield

per acre, the value of corn and cotton in the fall, and the value of a house per month; and this was all the proof offered by Nutt. (14 Tex., 261.) Now, what was the result of his showing the amount and value of the crop raised? Evidently, nothing but to exhibit to the jury what his wages would have been under the contract. There was no special actual damages proved, and there was no special value set upon the services already rendered. The damages were alleged in general terms and proved in a very general way, and the court say: "There was no error in admitting evidence of the contract. It was proper and necessary to ascertain its value, in order to estimate the damages occasioned by the breach of it." (Id., 265.) The court below had charged the jury that "The measure of damages would be the value in the year 1852 of the average crop of the Hassell place and the value of the rent of the house Hassell was to furnish Nutt, from the time of the breach of the contract to the end of the year." (Id., 261.) The court said, in affirmance of this said case, that the charge was not opposed to the law as laid down in Meade *v*. Rutledge, 11 Tex., 50, and refused to reverse the judgment.

The case now before the court is less liable to the objections raised by appellant than was the case just cited. The Supreme Court had said that a contract for overseer's wages was divisible, and in that case reaffirmed the same doctrine in the abstract, though its application was disregarded. The damages were laid, proved, and found by verdict in general terms for a general breach. Though the contract was in part performed at its breach, there was no *quantum meruit* in pleadings or proof. *  *  *

MOORE, ASSOCIATE JUSTICE.—Where one is employed to perform some stipulated work, or to labor for a specific period of time, and, after part performance of the contract on his part, he is wrongfully prevented from completing the work contracted for, or laboring for the full period of time

stipulated, it seems fully settled that the employee may treat the contract as abandoned, and sue for the reasonable value of the labor performed or service actually rendered. Where a contract has been wrongfully and without sufficient cause broken or annulled by one party, it may be disregarded by the other. Hence, the employee may in such case treat the contract as abandoned, and bring suit for the value of the work done or service performed by him; and in such case, an employer is estopped from setting up the contract as a bar to the employee's recovery for the reasonable value of the labor and service rendered. But while the employee' may elect to treat the contract as if it never existed, he is not required or compelled to do so; and, if he prefers it, he may sue on the contract for the damages sustained by reason of its breach. (Meade *v.* Rutledge, 11 Tex., 44; Hassell *v.* Nutt, 14 Tex., 260; Waco Tap R. R. Co. *v.* Shirley, 45 Tex., 355.)

The wrongful discharge of the employee, or refusal to allow him to perform the contract, puts an end to it, and consequently entitles him to an immediate action for its breach. But although a tender of performance by the employee and refusal by the employer gives an immediate right of action on the contract, (Sedg. on Dam., 266, 267,) nevertheless it is not tantamount to performance, in determining the measure of damages to which the plaintiff is entitled, unless the contract is clearly not apportionable. Ordinarily, the measure of damages, where the employee has been wrongfully dismissed, is the loss sustained by his being prevented from completing the contract. This evidently requires that he should be paid *pro rata* for the work done or service rendered, as stipulated in the contract, as well as the profits which it is made to appear he would have realized by its performance. (Waco Tap R. R. Co. *v.* Shirley, 45 Tex., 355.)

When the employee waits until the expiration of his term of employment, he may, in some cases, as held by this court,

40.

recover as damages the entire amount stipulated to be paid him under the contract, on proof that he had been unable to get other remunerative employment. (Meade *v.* Rutledge and Hassell *v.* Nutt, *supra.*) But this seems to me, on sound principle, to be merely an admissible means of ascertaining the loss sustained from the breach of the contract, rather than a fixed and determined measure of the damages to which the plaintiff is definitely and absolutely entitled.

An inspection of the petition shows that this suit was brought for damages alleged to have been sustained by the breach of the contract, and not for the value of the service performed, as appellant seems to suppose. The court therefore did not err in refusing to give the instructions asked by him, based upon this theory of the nature and object of the action. Nevertheless, the charge given by the court is not strictly accurate, or in entire conformity with the views herein expressed. The jury were told, if the plaintiff had complied with his part of the contract, and was, without fault on his part, wrongfully discharged by the defendant, they would find for the plaintiff the value of his services during the time he labored for the defendant, and also the damages he suffered by reason of the breach of the contract. But they were not instructed, as has been said they should have been, that they must take the contract as the standard for determining the value of the services rendered.

Nor does there seem to have been any evidence before the jury to guide them in determining or fixing the value of the services actually performed, or tending to prove the amount of profits which appellee might have realized, if he had been permitted to complete the contract; nor was there satisfactory evidence to show that appellee could not have got other approximately as valuable employment for the remainder of the year, after his discharge by appellant, whereby he could have realized a larger amount than appellant got credit for, if he had made proper exertions to do so. Evidently the jury must have supposed appellee entitled to recover the full

amount contracted to be paid him for his services, less the amount admitted to have been realized·from other employments, upon the bare proof of the breach of the contract.

To sustain the verdict on the evidence before us, we would, in effect, have to hold that tender of performance is as effectual as actual performance, not only to give a right of action, but also in fixing the measure of damages. But this, as has been said, is not generally the fact.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.